UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kaari Elizabeth A., <br><br> Plaintiff, <br><br> v. <br><br> Andrew Saul, Commissioner of Social Security, <br><br> Defendant. | Case No. 20-cv-744 (HB) <br><br><br> **ORDER** |

Karl E. Osterhout, Osterhout Berger Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, PA, 15139, for Plaintiff

Elvi D. Jenkins, Office of the General Counsel, 1301 Young Street, Suite 350, Dallas, TX, 75202, for Defendant

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kaari A. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The matter is now before the Court on the parties' cross-motions for summary judgment. [ECF Nos. 24, 27.] For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

I.   **Background**

A.   **Treatment History**

Plaintiff was born in November 1965. (Soc. Sec. Admin. R. (hereafter "R.") 38 [ECF No. 22].) She has a master's degree in Learning Disabilities and Behavior Disorders K-12 and is generally in good health. (*See* R. 39, 965, 1433.) Plaintiff's most recent work was in 2015 at a private college preparatory school in Minnesota as an education specialist. (*See* R. 26, 44, 1434.) Plaintiff contends that as a result of a "non-ergonomic work station" she developed issues with her hands and wrists. (R. 44.)

Plaintiff was initially diagnosed with de Quervain tenosynovitis and carpal tunnel syndrome in her right hand and, beginning in 2012, she underwent several surgeries and extensive therapy. (*See* R. 440, 459, 462, 485, 495.) Although Plaintiff experienced some improvement, she continued to have pain in her right thumb and, at the same time, began developing similar symptoms in her left hand. (*See, e.g.*, R. 547, 566, 571, 603.) In April 2014 Plaintiff had a trigger thumb release surgery on her left thumb. (R. 636.) Plaintiff's left hand improved, but she continued to have discomfort and limited function in her right thumb. (*See* R. 647, 649, 661, 669, 673, 677, 687, 715.)

In April 2015 Plaintiff saw Dr. David Falconer for a second opinion on her right thumb pain. (R. 735.) Dr. Falconer's opinion was that there was no "realistic" option to restore joint functionality (arthroplasty), and instead recommended Plaintiff consider fusing the joint to alleviate her pain (arthrodesis). (R. 734.) In April 2017 Dr. Falconer performed the "arthrodesis of [Plaintiff's] right thumb [metacarpophalangeal] joint with longitudinal K-wires and figure-of-eight cerclage wire." (R. 770.) Plaintiff's condition

then began to slowly improve. In May 2017 Plaintiff reported that her thumb felt "really good" and she experienced "minimal" pain. (R. 974–75.) After the surgery Plaintiff's pain diminished and grip strength improved, but she continued to struggle with repetitive fine motor movements. (R. 986, 1014, 1251, 1256, 1259–60.) In August 2018 Plaintiff indicated that the hardware in her thumb was irritating her (R. 1009) and in October 2018 Dr. Falconer removed the K-wires and figure-of-eight cerclage wire from Plaintiff's right thumb. (R. 1430.)

### B.  Procedural Background

Plaintiff filed an application for DIB on July 5, 2016, alleging an onset of disability date of August 17, 2013. (R. 15.) Plaintiff's application was denied initially and on reconsideration, and she timely requested a hearing before an administrative law judge ("ALJ"). On February 25, 2019, the ALJ convened a hearing at which Plaintiff and a vocational expert testified. (R. 15.)

On March 18, 2019, the ALJ issued a written decision denying Plaintiff's application. (R. 12–28.) First, the ALJ determined that Plaintiff's earnings record showed that Plaintiff had enough quarters of coverage to remain insured through December 31, 2018, such that she was required to establish that she was disabled on or before that date in order to obtain DIB. (R. 16.) Following the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ determined that Plaintiff did not engage in substantial gainful activity from the alleged onset date through her date last insured. (R. 17.) At step two, the ALJ determined Plaintiff had the following severe impairments: cervical degenerative disc disease, right knee meniscus tear (status-post

repair) and degenerative joint disease, right thumb dysfunction (status-post fusion) and right shoulder osteoarthritis. (R. 17–18.) The ALJ found at the third step that none of the impairments met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 19.)

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). (R. 20–25.) As relevant here, the ALJ analyzed whether the intensity, persistence, and limiting effects of Plaintiff's symptoms were as severe as she claimed. (*Id.*) The ALJ also analyzed and assigned evidentiary weight to medical sources who opined on Plaintiff's condition. (R. 24–35.) The ALJ found Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions: occasionally climb ladders, ropes, or scaffolds; frequently kneel, crouch, and crawl; occasionally reach overhead with the right, dominant upper extremity; and occasionally push, pull, handle, and finger with the dominant, right hand. (R. 20.) In light of this RFC, the ALJ concluded Plaintiff could perform past relevant work as an education specialist. (R. 25.) Alternatively, the ALJ concluded Plaintiff could perform other work existing in significant numbers in the national economy. (R. 27.) Accordingly, the ALJ determined Plaintiff was not disabled. (R. 28.)

The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then filed this action for judicial review.

Plaintiff argues the ALJ erred at the fourth step by concluding that Plaintiff was able to occasionally push, pull, handle, and finger with her right hand. (Pl.'s Mem. Supp.

4

Mot. Summ. J. at 1 [ECF No. 25].) Specifically, Plaintiff contends the ALJ erroneously assigned little weight to the medical opinions of Dr. David Falconer, MD, Plaintiff's treating physician, and the State Agency medical consultants. (*See id.* at 17–23.) Plaintiff also argues the ALJ erred by discrediting Plaintiff's subjective account of her limitations when he determined Plaintiff's residual functional capacity. (*Id.* at 24.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited in the parties' memoranda. The Court will incorporate the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.   Standard of Review

Judicial review of the SSA's denial of benefits is limited to determining whether substantial evidence on the record supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must

affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove her disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

#### A. Legal Standards Applicable to Step Four RFC Determination

An RFC assessment measures the most a person can do, despite her limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). In addition, "RFC is not simply a laundry list of impairments and limitations." *Gann v. Colvin*, 92 F. Supp. 3d 857, 884 (N.D. Iowa 2015). Thus, the ALJ may distill what may be numerous impairments and limitations into a descriptive phrase, as long as it accurately captures a claimant's abilities in a work setting. *See, e.g., Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding the ALJ's description of the claimant as "able to do simple, routine, repetitive work"

6

adequately accounted for the claimant's borderline intellectual functioning).

> **B.    Whether the ALJ Erred by Concluding at Step Four that Plaintiff was Able to Occasionally Push, Pull, Handle, and Finger with her Right Hand**
>
> **1.    The ALJ's Consideration of Medical Opinions**
>
> **a.    Dr. Falconer's Medical Opinion**

Plaintiff argues that the ALJ disregarded the medical opinion of one of Plaintiff's treating physicians, Dr. David Falconer.[2] The opinion of a treating medical source should be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002). But a treating physician's opinion does not "automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995). An ALJ may discount a medical opinion if it is inconsistent with other substantial evidence, such as "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch*, 201 F.3d at 1013 (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785,

---

[2] Dr. Falconer completed two forms in which he offered his opinion on Plaintiff's condition: one in June 2017 and one in February 2019. (R. 1485, 2621.) The ALJ specifically addressed only the February 2019 opinion in his order (R. 25), and although Plaintiff refers to both opinions in the background section of her memorandum (*see* Pl.'s Mem. Supp. Mot. Summ. J. at 4–5 [ECF No. 25]), her argument also focuses only on the February 2019 opinion (*see id.* at 21–23). Accordingly, this Court will limit its analysis to the February 2019 opinion.

790–91 (8th Cir. 2005).

Dr. Falconer's opinion is recorded on a form in which he notes that Plaintiff has "weakness of the right thumb/hand" and "decreased dexterity of the right thumb." (R. 2621.) He checked a box indicating that Plaintiff could write, type, and finger, but was "unable to perform at normal speed for more than a few minutes." (R. 2621.) As to whether Plaintiff would need breaks, Dr. Falconer indicated that would be determined by Plaintiff, but that she should stop working when it became painful and could resume working when the pain subsided. (R. 2622.) In the margin next to one question Dr. Falconer wrote "no pinching or gripping with the right hand on a frequent or repetitive basis over 1 to 2 pounds." (R. 2622.) He indicated Plaintiff would only be able to spend 25% of a workday using her right hand to grasp, turn, and twist objects or doing fine manipulations with her fingers. (R. 2622.) Dr. Falconer also opined that "due to weakness and decreased dexterity" Plaintiff might need two hands to hold a cup of coffee. (R. 2623.)

The ALJ gave Dr. Falconer's assessment little weight for two reasons.[3] (R. 25.) First, the ALJ commented that the opinion was in the form of a checklist, and "gives no detailed explanation as to why the [Plaintiff] is limited to the extent determined." (R.

---

[3] In his opinion the ALJ wrote that "Dr. Falconer purportedly enjoys a treating relationship" with Plaintiff. (R. 25.) From this, Plaintiff suggests the Court should conclude that the ALJ was mistaken or skeptical about Dr. Falconer's role as a treating medical provider. (*See* Pl.'s Mem. Supp. Mot. Summ. J. at 21.) The Court disagrees. Although the Court cannot speak for the ALJ's word choice, it is clear from the record and the ALJ's analysis thereof that the ALJ viewed Dr. Falconer as one of Plaintiff's treating physicians.

8

25.) Although Dr. Falconer took the time to write a couple of short notes on the form, the ALJ is correct that the opinion is conveyed via a checklist and is largely lacking in explanation. The Eighth Circuit Court of Appeals has taken a dim view of such forms. *See, e.g.*, *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). The form completed by Dr. Falconer was similar to the form at issue in *Thomas*, which "consist[ed] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses." *Id.* As in *Thomas*, Dr. Falconer's assessment recounted no medical evidence and provided no elaboration—other than saying Plaintiff experienced weakness and decreased dexterity—and thus possessed "little evidentiary value." *Id.* (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). The ALJ was entitled to discount the opinion on that basis alone. *See id.*

Second, the ALJ discounted Dr. Falconer's 2019 opinion because it contradicted other record evidence regarding the functioning of Plaintiff's right hand. (R. 25.) Specifically, the ALJ cited an Independent Medical Evaluation report written by Dr. Lawrence Donovan, D.O., on May 13, 2015.[4] In the portion of the report the ALJ cites, Dr. Donovan describes video footage from late 2014 and early 2015 that documents Plaintiff's movements and behaviors. (R. 1448–54.) The video shows several occasions where Plaintiff is seen using her right hand and thumb without apparent difficulty, including to carry a cup or water bottle. (*E.g.*, R. 1449, 1453, 1454.) The same footage

---

[4] At the time the report was written Plaintiff had not yet had her right thumb joint fused. (*See* R. 1436 ("Dr. Falconer has evaluated her, by her report, and he has recommended a fusion of the thumb metacarpophalangeal joint.").)

9

shows Plaintiff using her right hand to unzip a wallet, manipulate a fork, tug on a dog leash, pinch a straw, and unscrew a gas cap. (R. 1449–54.) Although the activities Dr. Donovan observed were in late 2014 and 2015, and therefore well before the date of Dr. Falconer's opinion, Dr. Falconer's form explicitly indicates that the restrictions he describes date back to 2015. (R. 2623.) Indeed, since Dr. Falconer's opinion was issued on February 12, 2019—*after* the date Plaintiff was last insured, December 31, 2018—its only probative value is insofar as it describes limitations that predate it. (R. 2623.) Furthermore, the record shows that although Plaintiff's recovery from the April 2017 joint fusion surgery was fraught, Plaintiff's symptoms were generally worse before the surgery than after. (*Compare e.g.*, R. 658, 669, 686, 715, 719–20) (Plaintiff's subjective reports to providers in 2014 and 2015) *with e.g.*, R. 998, 1001, 1014, 1428 (Plaintiff's subjective reports to providers in 2018).) That is, if Plaintiff was able to grasp a cup or water bottle in her right hand in 2015, the ALJ had reason to be skeptical that her function had deteriorated to the extent that she was unable to hold a coffee cup in 2019. The ALJ's determination to give no weight to the 2019 opinion of Dr. Falconer was therefore not contrary to substantial evidence.

### b. State Medical Consultants

Plaintiff also argues the ALJ erred when he rejected the State Agency medical consultants' opinions that Plaintiff could perform only occasional fingering but no handling after December 2015.

Two medical consultants offered their opinions as to Plaintiff's abilities, and each opinion considered Plaintiff's records from two different time periods. First, in 2016 Dr.

George Erhard, M.D., offered his opinion as to Plaintiff's physical RFC in the period between August 13, 2013 and December 8, 2015. (R. 78–80.) As to Plaintiff's right hand, Dr. Erhard concluded that Plaintiff's handling and fingering were "limited to occasional" use. (R. 80.) Dr. Erhard then evaluated Plaintiff's physical RFC for the period of December 9, 2015 through August 30, 2016, the date Dr. Erhard issued his assessment. (R. 80–82.) For this period, Dr. Erhard concluded Plaintiff's abilities were more limited: occasional fingering and no handling. (R. 82.) Based on those findings, Dr. Erhard concluded Plaintiff was not disabled. (R. 83.)

Plaintiff's file was reevaluated by Dr. M. Ruiz, M.D., in 2017. Dr. Ruiz considered the same initial time period, from August 13, 2013 to December 8, 2015 and agreed with Dr. Erhard that Plaintiff was limited to occasional handling and "fine manipulation" or fingering. (R. 94–95.) Dr. Ruiz then considered Plaintiff's physical RFC from December 9, 2015, through the "present," which was, at the time of the assessment, April 27, 2017. (R. 96–98.) Although this second timeframe was slightly longer than that considered by Dr. Erhard, Dr. Ruiz drew the same conclusion as Dr. Erhard: Plaintiff should be limited to occasional fingering and no handling with her right hand. (R. 97.) Dr. Ruiz also ultimately concluded that Plaintiff was not disabled. (R. 99.)

Plaintiff argues the ALJ erred by according the State Agency medical consultants' opinions little weight without offering "good/specific/supported" reasons. (Pl.'s Mem. Supp. Mot. Summ. J. at 19.) Specifically, Plaintiff takes issue with the ALJ's conclusion that there was no evidence to support the consultants' opinions as to Plaintiff's ability to

11

handle, push, and pull because Plaintiff "showed good range of motion and intact grip strength." (R. 24.) Plaintiff argues the ALJ's conclusion is "illogical and unreasonable." (Pl.'s Mem. Supp. Mot. Summ. J. at 20.)

The Court disagrees. As an initial matter, evidence showing good range of motion and grip strength *does* appear to undermine the consultants' conclusions about Plaintiff's limited ability to handle, push, and pull. Additionally, the ALJ began his assessment of the consultants' opinions by considering their opinions on other aspects of Plaintiff's RFC. For example, the consultants concluded that Plaintiff could only occasionally kneel, crouch, or crawl (R. 24), but as the ALJ pointed out, the record showed that Plaintiff engaged in activities, such as yoga, that required extensive kneeling, crawling, and crouching. Thus, the ALJ concluded, the consultants' conclusions were overly restrictive on this point. Next, the ALJ cited evidence that Plaintiff had a shoulder condition that would "likely interfere with her ability to reach overhead more than occasionally," but neither consultant accounted for that limitation in their opinion. (R. 24.) In other words, the ALJ identified two significant failings in the medical consultants' findings, one overly restrictive and one under-restrictive, before even reaching the question of Plaintiff's right-handed abilities.

Moreover, as the Eighth Circuit has held, a reviewing court should evaluate an ALJ's analysis in light of the entirety of his or her decision. That is, an ALJ is not required to repeat his or her reasoning in each relevant paragraph; instead, the ALJ's analysis in one part of the decision should be read as a component of the analysis in another part of the decision. *See Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006)

(finding the ALJ considered evidence of a listed impairment and concluding that "[t]he fact that the ALJ did not elaborate on this conclusion [did] not require reversal, because the record support[ed] her overall conclusion"); *Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) (the ALJ's statements in body of decision may shed light on other findings). Although the portion of the opinion focused on the medical consultants' conclusions only identified Plaintiff's range of motion and grip strength, his decision elsewhere cited other relevant data points, such as Plaintiff's history of medical treatment (R. 21), opinions of her treating provider (R. 25), Plaintiff's own subjective assessment of her condition (R. 21), and other observational data (R. 23).

Importantly, there is no requirement that the ALJ's RFC findings be supported by a specific medical opinion, such as the opinions of the State Agency medical consultants; rather, the RFC determination is based upon review of the record as a whole. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ evaluated the conflicting evidence in the record and determined that the medical opinions were largely "overly restrictive given the evidence of record." (R. 25.) Although it might have been possible to reach a different conclusion based on the record, it is not the Court's job to weigh the evidence anew, but rather to evaluate whether the ALJ's conclusions were reasonable. *See Robinson*, 956 F.2d at 838. Accordingly, the Court finds the ALJ's decision to accord little weight to the opinions of the state medical examiners was well-reasoned and supported by substantial evidence.

### 2. The ALJ's Consideration of Plaintiff's Subjective Complaints

Plaintiff argues the ALJ's analysis of her "self-described limitations is not based upon a logical or reasonable reading of the evidence." (Pl.'s Mem. Supp. Mot. Summ. J. at 1.) Specifically, Plaintiff argues the ALJ failed to fully consider Plaintiff's statements about her alleged disability and the intensity of her pain, history of aggressive treatment, daily activities, precipitating and aggravating factors, and "stellar work history." (*Id.* at 24–29.) Plaintiff points to records of the statements she made to medical providers to show that her subjective reports of intense pain were valid and consistent with the objective medical evidence.

But an ALJ must consider several factors in evaluating a claimant's subjective symptoms and their effect on her RFC, in addition to whether the symptoms are consistent with the objective medical evidence. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). These factors include the claimant's daily activities; work history; intensity, duration, and frequency of symptoms; side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322; SSR 16-3p, 2016 WL 1119029, at *5. The ALJ need not explicitly discuss each factor, (*Goff*, 421 F.3d at 795), however, and a court should defer to the ALJ's findings when the ALJ expressly discredits the claimant and provides good reasons for doing so. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

Here, the ALJ considered "all symptoms and the extent to which these symptoms . . . [were] consistent with the objective medical evidence." (R. 20.) Indeed, the ALJ began his step four analysis with an account of Plaintiff's description of her pain:

> The claimant alleges disability secondary to her cervical degenerative disc disease, right knee meniscus tear, degenerative joint disease, right thumb dysfunction, and right shoulder osteoarthritis. She reports that her right hand deformity manifests every minute of the day and affects all aspects of her daily functioning. Specifically, she reported her condition affects her ability to write, grip, type, and grasp. . . . At her hearing, she testified that she has constant pain in her right thumb. She testified that she has difficulty dressing, cooking, writing, putting on jewelry, and holding a cup of coffee.

(R. 21.) However, the ALJ also noted that aspects of the record undermined Plaintiff's statements about her disabling symptoms. (R. 21.) For example, the ALJ referenced medical examination findings showing "excellent motion at the right thumb joint without any crepitation or locking," intact grip strength, and, after Plaintiff's hardware removal surgery, "excellent bony coalition across the fusion site." (R. 21.) The ALJ ultimately concluded that "the evidence of record supported some deficit in functioning such that limitations are warranted." (R. 21.) He therefore limited Plaintiff to light work with only occasional pushing, pulling, handling, and fingering with her right hand. Thus, the Court disagrees with Plaintiff's contention that the ALJ "[failed] to draw a logical bridge between the evidence and his findings." (Pl.'s Mem. Supp. Mot. Summ. J. at 24.) While the record clearly indicates that Plaintiff experienced intense pain at times, the record also supports the ALJ's assessment that Plaintiff's right thumb ailment was not entirely limiting.

Plaintiff also argues that the ALJ was required to consider her work history as a "highly relevant credibility factor." (Pl.'s Mem. Supp. Mot. Summ. J. at 28.) The Court disagrees. Although a claimant's work history is relevant to analyzing her subjective complaints, *see Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001), an ALJ is not required to discuss it, and the omission of that information is not a reversible error, *see Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007).

The Court finds the ALJ considered the entire record, including Plaintiff's testimony about her pain and other subjective assessments, when making his RFC determination. Accordingly, the ALJ's decision that Plaintiff had the RFC to perform light work with only occasional pushing, pulling, handling, and fingering with her right hand was based on proper considerations and was grounded in substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes the ALJ properly evaluated the available medical evidence and medical opinions and accounted for Plaintiff's subjective complaints in determining Plaintiff's RFC.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Kaari A.'s Motion for Summary Judgment [ECF No. 24] is **DENIED**; and

2. Defendant Andrew Saul's Motion for Summary Judgment [ECF No. 27] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 11, 2021

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge